**C. W. HOLMES and Earl B. Mitchell, Jr., Executor of the Estate of John R. Wilver, Deceased, Plaintiffs in Error,**

v.

**The CORPORATION COMMISSION of the State of Oklahoma and Viersen & Cochran, Defendants in Error.**

**No. 42193.**

Supreme Court of Oklahoma.

March 10, 1970.

Mitchell, Mitchell & DeClerck, by James R. Cox, Enid, for plaintiffs in error.

Wallace E. Robertson, Oklahoma City, for Viersen & Cochran, defendant in error.

Ralph L. Wampler, Oklahoma City, for Corporation Comm., defendant in error.

WILLIAMS, Justice:

This is an appeal by C. W. Holmes and Earl B. Mitchell, Jr., Executor of the Estate of John R. Wilver, Deceased, protestants below, from an order of this State's Corporation Commission pooling the separately owned mineral estates, adjudicating the rights of participation in production and other correlative rights, and authorizing the drilling of a gas well by Viersen and Cochran, applicant below, to the common source of supply in a drilling unit in Garfield County, Oklahoma. The parties will be referred to as protestant(s), applicant and the Commission.

In November, 1965, the Commission entered its order creating drilling and spacing units of one entire governmental section each for the production of gas and gas condensate from the Mississippi Lime common source of supply underlying certain described lands in Garfield County, Oklahoma. Among the lands described in that order was Section 8, Township 21 North, Range 6 West, Garfield County, the property involved herein.

Subsequent to the entry of the above order creating a drilling and spacing unit of Section 8, applicant Viersen and Cochran filed its application seeking an order pooling the individual mineral estates in the section or drilling unit involved and authorizing the drilling of a well thereon. In this application, applicant alleged that it and parties with whom it had reached an agreement for the development of the drilling and spacing unit owned the oil and gas leasehold estate in the west half of Section 8, but that it had been unable to reach an agreement with the owner or owners of the leasehold estate in the east half of the section. Applicant further alleged that the leasehold estate on the east half formerly had been owned by John R. Wilver but recently had been assigned by Wilver to C. W. Holmes, such assignment subject to the reservation of a production payment of $2,000 per acre payable out of ½ of ⅞ of the production.

At the hearing before the Commission, protestant Holmes moved to continue the hearing on the ground that the notice thereof was defective. This motion was overruled and the Commission proceeded to hear evidence. In summary, applicant introduced evidence attempting to establish that John Wilver had obtained, as lessee, oil and gas leases covering the east half of section 8 and subsequently had assigned these leases to his sister, C. W. Holmes, reserving a production payment of $2,000 per acre out of ½ of ⅞ of the production; that Wilver had obtained oil and gas leases on other lands in Garfield County and had assigned these leases to his sister under similar conditions as those involved herein; that in view of the production payment imposed by Wilver in the assignments to Holmes, the leasehold estate had no value and the permitted well in section 8 could not be drilled; that if the production payment had not been imposed, the value of the leasehold estate covering the Mississippi Lime common source of supply would be $40.00 per acre; that the cost of drilling and completing a well in section 8 would be approximately $100,000, which cost would be recovered in five years; and, that section 8 is presently being drained by production from the Mississippi Lime formation underlying section 7, which adjoins section 8.

Protestant Holmes introduced the testimony of an expert witness that the present value of the leasehold estate in the east half of section 8 was from $50.00 to $100.00 an acre. The witness stated that the permitted well in section 8 could be drilled and completed for $85,000 to

$90,000, but admitted that this amount could increase to $100,000 if difficulties were encountered. The witness also admitted that section 8 was located in an area where the gas market was presently poor and production low.

At the conclusion of the evidence, protestant Holmes stated that she was not actively engaged in the oil business and requested the Commission to include in the pooling order, in addition to provisions determining the value of her leasehold interest and her prorata share of the costs of development if she chose to participate in the working interest in the drilling unit, a third alternative, a so-called "bonus-penalty", allowing her to participate in development but not receive any portion of the ⅞ working interest until such time as applicant had recovered the costs of drilling, completing and operating the permitted well plus a reasonable penalty. Subsequent to protestant's request, applicant reopened to introduce evidence that due to the length of time estimated for applicant to recover its costs it would be economically unfeasible to drill a well in section 8 if it (applicant) were allowed a bonus-penalty of only 150%, i. e., if it were allowed to recover only 150% of the cost of development prior to protestants' participating in their portion of the ⅞ working interest.

At the conclusion of the proceedings, the Commission entered its order pooling the leasehold interests in section 8. This order also provided that protestants were to elect within 15 days whether they would participate in the working interest in the well by paying their pro rata share of the costs of development, or, would not participate and thus would not receive their portion of the ⅞ working interest until applicant had recovered 250% " * * * of the share of the cost of drilling, completing, equipping and operating said well allowable to such outstanding interests."

From this order of the Commission, protestants appeal.

In their first proposition for reversal, protestants contend that the Commission was without jurisdiction to enter the order appealed from for the reason that notice of the proceeding below was not published for the time and in the manner prescribed by law. The basis of this contention is that in proceedings for pooling under 52 O.S.1961, § 87.1(d), the notice requirements of 52 O.S.1963 Supp. (now 1969 Supp) § 87.1(a) which provides for publication both in Oklahoma City and in the county or counties in which the lands are located, are applicable. From the record before us, it is clear applicant followed the notice provisions of 52 O.S.1961, § 97, which require publication of notice only in Oklahoma City. By its provisions, the notice requirements of § 97 are applicable to proceedings brought before the Commission under sections 84 through 96, 52 O.S. 1961.

We have recently answered this contention contrary to the position of protestants herein. Ranola Oil Co. v. Corporation Commission, Okl., 460 P.2d 415.

Subsection (a) of § 87.1, provides for proceedings in the Commission to establish drilling and spacing units. As noted above, this subsection specifically sets forth the type of notice by publication required in such proceedings. Subsection (b), 52 O.S. 1963 Supp. (now 1969 Supp.) § 87.1, provides inter alia, for hearings before the Commission to obtain exceptions to the designated well locations. By its provisions, the notice requirements applicable to such proceedings under subsection (b) are those contained in § 97. Subsection (c), § 87.1, provides for proceedings in the Commission to decrease the size of well spacing units or to permit the drilling of additional wells within the established units. Subsection (c) specifically provides that in proceedings thereunder, the notice requirements of subsection (a) are applicable. Subsection (d), which provides for proceedings, as involved herein, to pool separately owned leasehold interests, merely provides that such proceedings are to be had after "proper notice."

As noted above, there are several types of proceedings provided for in § 87.1. Under subsections (a) and (c), the notice requirements are specifically set forth. From the language of these two subsections, it is clear that the Legislature intended to require a more stringent notice of the proceedings therein involved than that set forth in § 97. However, the language of subsection (d) refers only to "proper notice." In our view, if the Legislature had intended to make the notice requirements of subsection (a) applicable to subsection (d), it would have specifically done so as it did in subsection (c). Therefore, it is our opinion that the notice requirements of § 97, and not those of subsection (a), § 87.1, are applicable to proceedings under subsection (d), § 87.1. See Ranola Oil Co. v. Corporation Commission, supra.

In their second proposition for reversal, protestants contend that the Commission's order setting the bonus-penalty at 250% was arbitrary, unreasonable and discriminatory, and was not supported by the evidence.

It should be noted herein that protestants are not challenging the authority of the Commission to determine a bonus-penalty. In the hearing below, they requested that a reasonable bonus-penalty amount be included in any pooling order entered by the Commission. Although making this request, protestants failed to introduce any evidence relative to the amount of bonus-penalty. Applicant, on the other hand, introduced evidence that due to the estimated time required to recover the costs of drilling, completing and operating the well, the venture would be economically unfeasible if the bonus-penalty were not set at an amount larger than 150%.

It is clear from the record herein that the Corporation Commission would have been warranted in finding protestant Wilver's action in burdening the leasehold estate in the east half of section 8 with the production payment in the amount set forth in the assignment of the leasehold estate to his sister, protestant Holmes, caused the leasehold estate to have, little, if any, value for the purposes of determining a price thereon which applicant, as a reasonably prudent operator, could afford to pay protestant Holmes for the purchase of the leasehold estate. In view of this action of burdening the leasehold estate, of protestants' failure to introduce evidence concerning the amount of the bonus-penalty, of the costs of development, and of the estimated time to recover these costs, we cannot say that the order of the trial tribunal was arbitrary, unreasonable or contrary to the evidence.

The order of the Corporation Commission is affirmed.

IRWIN, C. J., and DAVISON, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.