LEEDE OIL & GAS, INC., and Leede Exploration, Appellants,

v.

The CORPORATION COMMISSION OF the STATE OF OKLAHOMA; Inexco Oil Company; Phillips Petroleum Company; Cotton Petroleum Corporation; Hadson 1981 Oil & Gas Program; Richland 1982–1 Drilling Program, Ltd.; Richland 1982 Arapaho Drilling Program, Ltd.; Park Avenue Exploration Corporation; Triad Energy, Inc.; Rogers Resources, Inc.; Pan–Exploration Companies, Inc.; Masters–Gray Investments, Inc.; BBX Oil Corporation; Beahr Energy, Inc.; Hadson Petroleum Corporation; Devon Corporation; Unit Drilling & Exploration Company; Slawson Oil Company; Gasland, Inc.; Richland Resources Corporation; George F. Gauger; Virgil W. Bernard; Southport Exploration, Inc.; A–H 1980 Program, Inc.; Orville Eberly; James C. Meade; Robert E. Eberly, Sr.; K.T. Meade, Jr.; Carroll McCaulley; Employees Title Company, Inc.; J.R. Johnson; and T.S. Dudley Land Company, Appellees.

No. 66656.

Supreme Court of Oklahoma.

Nov. 24, 1987.

Watson & McKenzie by H.B. Watson, Jr., Sharon Taylor Thomas and Leslie M. Forbes, Oklahoma City, for appellants.

McAfee & Taft by Stanley L. Cunningham and Gary W. Catron, Oklahoma City, for appellees Inexco Oil Co., Phillips Petroleum Co. and Cotton Petroleum Corp.

LAVENDER, Justice:

Order No. 222247 was issued by the Oklahoma Corporation Commission on August 9, 1982. This order pooled the mineral interests in the common sources of supply underlying Section 18, Township 4 North, Range 7 West, in Grady County, Oklahoma. Two applications had been filed seeking a pooling of the interests underlying this section. The first application had been filed by appellant Leede Exploration, a partnership, and had named, among others, appellees Inexco Oil Company, Phillips Petroleum Company and Cotton Petroleum Corporation as respondents. The second application seeking a pooling of Section 18 had been filed by appellee Inexco Oil Company. In order No. 222247 the Commission granted the application of appellant Leede Exploration. In that order it was found that appellant Leede Oil & Gas, Inc., was also an owner of the right to drill in Section 18 and the order designated appellant Leede Oil & Gas, Inc., as the operator of the well, unit and common sources of supply covered by the pooling order.

The unit well drilled pursuant to Order No. 222247 was designated the Rust 1–18. The cost of the drilling operations on the Rust 1–18 became the source of contention between the appellants and appellees Inexco Oil Company, Phillips Petroleum Company and Cotton Petroleum Corporation. Appellees filed a district court action alleging breach of a joint operating agreement entered into between appellants and appellees subsequent to Order No. 222247. The alleged source of the breach was appellants' use of an overpriced drilling rig for the purpose of benefiting the rig owner who would then pass benefits to appellants.

Subsequent to the filing of the district court action by appellees, appellant Leede Oil & Gas, Inc., filed application with the Corporation Commission seeking a determination of the proper drilling costs of the Rust 1–18 well. This application was given the designation of CD No. 125163. Appellees also filed application with the Corporation Commission. The application filed by appellees was designated CD No. 132119 and sought a modification of Order No. 222247 to delete the provisions of that order finding Leede Oil & Gas, Inc., to hold a right to drill in Section 18 and appointing Leede Oil & Gas, Inc., as unit operator.

Causes CD No. 125163 and CD No. 132119 were consolidated for consideration by the Corporation Commission. In Order No. 297828 the Commission dismissed CD No. 125163 finding that it no longer had jurisdiction to determine proper well costs of the Rust 1–18 well because the parties participating had entered into a private joint operating agreement covering the well operations. The Commission granted the application in CD No. 132119 finding that Leede Oil & Gas, Inc., did not own a right to drill in Section 18, that Leede Exploration, which held Leede Oil & Gas, Inc., as a wholly owned subsidiary, had held the right to drill, but that Leede Oil & Gas, Inc., held no right in its own name. Appellants Leede Oil & Gas, Inc., and Leede Exploration now challenge Order No. 297828 as to its rulings on both applications.

### I.

The Corporation Commission, in its ruling dismissing the application of appellants in CD No. 125163, relied on this Court's pronouncements in *Tenneco Oil Company v. El Paso Natural Gas Company*,[1] for its conclusion that the joint operating agreement between the parties had precluded its exercise of jurisdiction over the question of proper well costs regarding the drilling of the Rust 1–18 well. In *Tenneco*, and the succeeding cases of *Samson Resources Co. v. Corporation Commission*,[2] *MM Resources, Inc. v. Huston*,[3] and *Nilsen v. Ports of Call Oil Company*,[4] this Court defined the respective jurisdictional roles of the district courts and of the Corporation Commission in disputes growing out of operations involving the pooling of interests for the development of oil and gas. In *Tenneco, Samson Resources* and *MM Resources*, we expressed the view that the forced pooling order issued by the Commission was in the nature of a "bare bones" foundation regarding the relative rights and obligations of those holding affected mineral interests in the unit covered by the pooling order. We further expressed the view that the interest holding parties could further flesh out the terms of the pooling order by private contractual agreement among themselves regarding their rights and obligations under the pooling order. Where a dispute arose concerning those rights and obligations, and where that dispute concerned private rights arising from contract rather than a public issue right regarding the conservation of oil and gas arising from the Commission order, we found jurisdiction to properly lie in the district courts rather than in the Corporation Commission.

In the present case the joint operating agreement entered into between the parties concerning the development and operating of the Rust 1–18 well specifically provided:[5]

All wells drilled on the Contract Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area. If it so desires, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefor shall not exceed the prevailing rates in the area and the rate of such charges shall be agreed upon by the parties in writing before drilling operations are commenced, and such work shall be performed by Operator under the same

---

**1.** 687 P.2d 1049 (Okla.1984).

**2.** 702 P.2d 19 (Okla.1985).

**3.** 710 P.2d 763 (Okla.1985).

**4.** 711 P.2d 98 (Okla.1985).

**5.** Article V, subsection D.

terms and conditions as are customary and usual in the area in contracts of independent contractors who are doing work of a similar nature.

It is apparent that the question which appellees sought to have adjudicated in the district court concerned compliance with this provision of their agreement.[6]

 Here the dispute at the heart of this matter concerns the private rights arising from the joint operating agreement entered into between the parties subsequent to the pooling order. As indicated, our decisions in *Samson Resources Co. v. Corporation Commission, MM Resources, Inc., v. Huston* and in *Tenneco,* would place the determination of this dispute in the district courts.

Appellants argue however that the jurisdiction to determine the reasonableness of well costs of a well drilled pursuant to a Commission pooling order is statutorily placed in the Corporation Commission by the provisions of 52 O.S.Supp.1982 § 87.1(e). Appellants rely on this Court's statements in the cases of *Stipe v. Theus,*[7] *Crest Resources and Exploration Corp. v. Corporation Commission,*[8] and *Amarex, Inc. v. Baker.*[9] In each of the cases cited by appellants this Court indicated that the Commission did have jurisdiction of the question of reasonableness of costs of a well drilled under the auspices of a Commission pooling order. The Court also indicated that the source of that jurisdiction was section 87.1(e). However, in none of the cited cases was there involved a subsequent agreement between the parties which could be construed as governing expenditures for the drilling of the well authorized by the pooling order.

In *Samson Resources* and *Amarex* this Court recognized that the power to monitor certain terms and conditions of a forced pooling order had been conferred by statute, either expressly or by implication, upon the Commission. In this regard the authority to monitor the reasonableness of operations under a forced pooling order is expressly granted. It is clear that the purpose of this statute is to protect the rights of parties holding interests affected by the pooling order when the pooling order remains the sole source governing operations affecting those interests. It is equally clear that, once the parties have reached subsequent agreement among themselves regarding the rights and obligations due each from and to the others in the development of a unit well, the agreement between the parties concerning their rights is enforceable in the district court.

 The question of the costs incurred in development of the unit and the liability of each of the parties participating in the development for those costs is clearly a question concerning the liability of one private individual to another. Where the propriety of those costs may only be measured on the basis of reasonableness under a Commission pooling order, the Commission is the proper forum for that determination and jurisdiction is properly conferred by section 87.1(e). This jurisdiction however is not exclusive.[10] Where the propriety of unit development costs is a question governed by private agreement between parties holding interests in the unit, the private rights nature of the action would properly place the question within the district courts for determination.[11]

**6.** As recognized in *Tenneco, Samson* and other opinions of this Court, 52 O.S.Supp.1982 § 87.1(e) clearly authorizes the owners to enter into such an agreement. Under the contract appellant agreed that the drilling costs would be limited to the rates prevailing in the area.

**7.** 603 P.2d 347 (Okla.1979).

**8.** 617 P.2d 215 (Okla.1980).

**9.** 655 P.2d 1040 (Okla.1982).

**10.** In *Stipe v. Theus,* supra, we stated at footnote 4 of the opinion:

Assuming arguendo that the Legislature could constitutionally confer exclusive jurisdiction in the Corporation Commission to determine the proper costs in the event of a dispute in the drilling and development of a pooled oil and gas drilling unit, § 87.1(e) may not be construed as conferring or a Legislative attempt to confer, such exclusive jurisdiction.

**11.** *Tenneco Oil Co. v. El Paso Nat. Gas Co.,* supra, note 1; *Samson Resources Co., v. Corp. Comm.,* supra note 2; and *MM Resources, Inc. v. Huston,* supra note 3.

Accordingly, the Commission ruling dismissing the application of appellants in CD No. 125163, is affirmed.

## II.

■ The second aspect of the order appealed concerns the finding by the Commission that Leede Oil & Gas, Inc., was not an owner of a mineral interest or of a right to drill in Section 18. Appellants argue that the Commission's modification of Order No. 222247 in the order appealed is the result of an improper collateral attack upon the prior order. Appellees contend that the modification was permissible as being made upon a change of knowledge of conditions, and was necessarily made because Leede Oil & Gas, Inc., was not a proper applicant to invoke the Commission's jurisdiction in Cause CD No. 125163.

Appellees' reasoning that it was necessary for the Commission to retroactively modify the prior pooling order to prevent the possibility of a charge of collaterally attacking the previous order is less than clear. The modification of Order No. 222247 was the result of the Commission's conclusions that Leede Oil & Gas, Inc., was not, and had not been, the holder of either a mineral interest or a right to drill in Section 18. This conclusion was in direct opposition to a specific finding on that point which was made in Order No. 222247. Appellees contend that the Commission's change in stance on this point was based on a change of knowledge of conditions regarding the holding of interests. This Court spoke to the questions of change of knowledge of conditions in the case of *Phillips Petroleum Company v. Corporation Commission,* [12] which is now relied upon by appellees. In that case we stated: [13]

However, CRA contends that there has been a change of knowledge of conditions on the part of the Commission. This contention is based upon language of the order stating that "it was not made clear" to the Commission at the

earlier hearing that the Upper Morrow "A" was a separate source of supply.

In our opinion, the proceeding in the Commission was a collateral attack on the prior order which was not appealed and which has become final. CRA, although having legal notice, failed to appear and participate in the original hearing. In this proceeding CRA introduced much if not all the same evidence as earlier introduced, stressed its own interpretation of this data, and requested the Commission to modify the original order on the basis of this interpretation which CRA contends was not sufficiently stressed before. This is precisely the situation prohibited by § 111, supra. The phrase "change in knowledge of conditions" (as would warrant a change by order) does not encompass a mere change of interpretation on the part of the Commission. Rather, it encompasses an acquisition of additional or new data or the discovery of new scientific or technical knowledge since the date of the original order was entered which requires a reevaluation of the geological opinion concerning the reservoir. In the instant case no new data or newly discovered scientific or technical knowledge was introduced. The Commission was merely persuaded to accept a different interpretation of the facts known at the time of the original hearing.

In the present case appellees were parties to the proceedings generating Order No. 222247 and appellees Inexco and Phillips were present at those proceedings. The information concerning Leede Oil & Gas, Inc's, ownership or non-ownership of an interest in Section 18 was available at the time of those proceedings. Appellees had access to that information but did not challenge the Commission's explicit finding at the time it was rendered. As in the *Phillips Petroleum* case cited, the Commission here has now been persuaded to accept a different interpretation of facts known or knowable at the time of the original hearing. As stated in *Phillips,* this is precisely

---

**12.** 482 P.2d 607 (Okla.1971).

**13.** 482 P.2d at 610, 611.

the situation prohibited by 52 O.S. 1981 § 111.

 Appellee's contention that Cause CD No. 125163 was necessarily dismissed because Leede Oil & Gas, Inc., was not a proper applicant in the case we also find to be without merit. In *May Petroleum, Inc. v. Corporation Commission,*[14] this Court held that to invoke the jurisdiction of the Corporation Commission under the oil and gas conservation statutes, an applicant must have an interest in the minerals or hold a right to drill in the common source of supply affected by the proposed order. We do not find the *May Petroleum* case applicable. Here there is no question raised regarding the jurisdiction of the Commission in issuing Order No. 222247. The parties concede that Leede Exploration, the applicant in that proceeding, possessed the proper interests in Section 18 to invoke the Commission's jurisdiction under 52 O.S.Supp.1982 § 87.1. In the course of the proceedings on Leede Exploration's application the Commission determined that Leede Oil & Gas, Inc., also possessed the right to drill on Section 18 and entered its order to that effect. Although its finding may have been factually incorrect, the Commission clearly had jurisdiction in entering the order.[15] Appellees had a full and fair opportunity to litigate the question of Leede Oil & Gas, Inc.'s interest in Section 18. They failed to take advantage of that opportunity and also failed to challenge the conclusions of the Commission embodied in Order No. 222247. That order has become final. Appellees are now precluded from raising the issue of the interest held by Leede Oil & Gas, Inc.[16]

## III.

Order No. 297828 issued by the Oklahoma Corporation Commission is *AFFIRMED* as it relates to CD No. 125163 and is *REVERSED* as it relates to CD No. 132119.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, SIMMS, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, J., dissenting from Part I and concurring in Part II.

OPALA, Justice, dissenting from Part I and concurring in Part II of the court's opinion.

The court holds in Part I of today's pronouncement that "[w]here the propriety of unit development costs is a question governed by private agreement between parties holding interests in the unit, the private rights nature of the action would properly place the question within the district courts' determination" [footnote text omitted]. I must recede from this view.

The jurisdiction statutorily conferred on the Corporation Commission by the terms of 52 O.S. 1981 § 87.1(e)[1] to determine controversies relative to reasonable costs of wells drilled under a pooling order is an exercise of the State's police power over *rights created solely by public law.* This power is an inalienable attribute of sovereignty. It cannot be relinquished or bargained away.[2]

The view I counsel the court to adopt today is that *no private contract* may operate to oust the Commission of its *primary cognizance* to resolve disputed public-law claims to reasonable unit develop-

---

**14.** 663 P.2d 716 (Okla.1982).

**15.** See *Woodrow v. Ewing,* 263 P.2d 167, 171 (Okla. 1953).

**16.** See *McDowell v. Austin,* 699 P.2d 1100 (Okla. 1985); *Symes v. Panhandle Co-op Royalty Co.,* 421 P.2d 852 (Okla.1966).

**1.** The terms of 52 O.S. 1981 § 87.1(e) provide in pertinent part:
"* * * * Such pooling order of the Commission *shall make definite provisions for the payment of cost of the development and operation,* which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision. *In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon.*" [Emphasis mine]

**2.** *Tenneco Oil Co. v. El Paso Natural Gas,* Okl., 687 P.2d 1049, 1056–1059 [1984], (Opala, J., dissenting).

**300** 

ment costs.[3]

I would hence vacate Order CD No. 125163 and remand the case with directions to determine the tendered controversy over costs.

---

**3.** *Stipe v. Theus,* Okl., 603 P.2d 347, 350 [1979] and *Crest Resources v. Corporation Commission,* Okl., 617 P.2d 215, 218 [1980].